## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

ADOLFO C. GUADAGNO. and
TRESSY GUADAGNO
individuals,

                                          Case No.:

       Plaintiffs,

v.

FIRSTBANK PUERTO RICO,
a foreign entity
EXPERIAN INFORMATION
SOLUTIONS, INC.,
a foreign for-profit corporation,
TRANS UNION, LLC,
a foreign limited liability company, and
EQUIFAX INFORMATION
SERVICES, LLC,
a foreign limited liability company,

       Defendants.

_____/

## **COMPLAINT**

**COMES NOW**, Plaintiffs, ADOLFO C. GUADAGNO (hereinafter, "Mr. Guadagno") and TRESSY GUADAGNO (hereinafter, "Mrs. Guadagno") (hereinafter collectively, "Plaintiffs"), by and through the undersigned counsel, and hereby sues Defendants, FIRSTBANK PUERTO RICO (hereinafter, "1First Bank"), EXPERIAN INFORMATION SOLUTIONS, INC. (hereinafter, "Experian"),    TRANS UNION, LLC (hereinafter, "Trans Union"), and

1

EQUIFAX INFORMATION SERVICES, LLC (hereinafter, "Equifax") (hereinafter collectively, "Defendants"). In support thereof, Plaintiffs state:

## PRELIMINARY STATEMENT

1.     This is an action brought by individual consumers for damages for violations of the Fair Credit Reporting Act, 15 United States Code, Section 1681 *et seq*. (hereinafter, the "FCRA") wherein 1First Bank improperly credit-reported and subsequently verified objectively inaccurate and incomplete information related to a consumer loan account allegedly owed to 1First Bank on Plaintiffs' consumer credit report and in Plaintiffs' consumer credit file as maintained by Experian, Equifax, and Trans Union.

2.     Moreover, 1First Bank continued their inaccurate and incomplete reporting of said consumer loan account after Plaintiffs repeatedly disputed 1First Bank's reporting of the account to Experian, Equifax, and Trans Union, and after 1First Bank received notice of Plaintiffs' disputes from Experian, Equifax, and Trans Union.

3.     Furthermore, this is an action for damages for Experian's, Equifax's, and Trans Union's violations of the FCRA wherein Experian, Equifax, and Trans Union failed to reasonably re-investigate and continued to incorrectly report the subject tradeline account furnished by 1First Bank despite Plaintiffs' repeated

disputes.

## JURISDICTION, VENUE & PARTIES

4.      Jurisdiction of this Court arises under 28 United States Code, Section 1331 as well as pursuant to the FCRA, 15 United States Code Section 1692, *et seq.*

5.      Defendants are each subject to the jurisdiction of this Court as each regularly transacts business in this District, and the events described herein occur in this district.

6.      Venue is proper in this District as the acts and transactions described herein occur in this District.

7.      At all material times herein, Plaintiffs are each a natural person residing in Pinellas County, Florida.

8.      At all material times herein, FIRSTBANK PUERTO RICO, is a banking Corporation incorporated in Puerto Rico, qualified to do business in Florida. Upon information and belief, Defendant, FIRSTBANK PUERTO RICO, is a subsidiary of or otherwise affiliated with FIRST BANCORP.

9.      At all material times herein, Plaintiffs made payments to 1First Bank while Plaintiffs resided in Pinellas County, Florida.

10.     At all material times herein, 1First Bank is also a "person" who

furnishes information to credit reporting agencies as provided in the FCRA and as defined by 15 United States Code, Section 1681s-2

11.    At all material times herein, Trans Union is a foreign limited liability company existing under the laws of the state of Delaware with its principal place of business located at 555 West Adams Street, Chicago, Illinois 60661.

12.    At all material times herein, Trans Union is also a "consumer reporting agency" as defined in 15 United States Code, Section 1681a(f) of the FCRA and regularly engages in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports.  Trans Union disburses such consumer reports to third parties under contract for monetary compensation.

13.    At all material times herein, Experian is a for-profit corporation existing under the laws of the state of Ohio with its principal place of business located at 475 Anton Boulevard, Costa Mesa, California 92626.

14.    At all material times herein, Experian is also a "consumer reporting agency" as defined in 15 United States Code, Section 1681a(f) of the FCRA and regularly engages in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports.  Experian disburses such consumer reports to third parties under contract

for monetary compensation.

15.     At all material times herein, Equifax is a foreign limited liability company existing under the laws of the state of Georgia with its principal place of business located at 1550 Peachtree Street, NW, Atlanta, GA 30309.

16.     At all material times herein, Equifax is also a "consumer reporting agency" as defined in 15 United States Code, Section 1681a(f) of the FCRA and regularly engages in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports.  Equifax disburses such consumer reports to third parties under contract for monetary compensation.

## FCRA STATUTORY STRUCTURE

17.     Congress enacted the FCRA requiring consumer reporting agencies to adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information.  *See* 15 United States Code, Section 1681b.

18.     Under the FCRA, whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure *maximum*

*possible accuracy* of the information concerning the individual about whom the report relates. *Id.* at § e(b) (emphasis added).

19.     Under the FCRA, if a consumer disputes the *completeness or accuracy* of any item of information contained in a consumer's file, and the consumer notifies the agency directly of such dispute, the agency shall reinvestigate—free of charge—and report the current status of the disputed information, or delete the item from before the end of the 30-day period beginning on the date on which the agency receives notice of the consumer's dispute. *Id.* at § i(a) (emphasis added).

20.     Under the FCRA, when a consumer reporting agency conducts any reinvestigation with respect to disputed information in the file of any consumer, the consumer reporting agency shall review and consider all relevant information submitted by the consumer. *Id.* at § i(a)(4).

21.     Under the FCRA, if, after any reinvestigation of any information disputed by a consumer, an item of information is found to be *inaccurate, incomplete, or cannot be verified,* the consumer reporting agency shall promptly delete that item of information from the consumer's file or modify that item of information, as appropriate, based on the results of the reinvestigation. *Id.* at § i(a)(5) (emphasis added).

22.    Under the FCRA, after a furnisher of information receives notification pursuant to Section 1681i(a)(2) of a dispute with regard to the *completeness or accuracy* of any information provided by a person to a consumer reporting agency, the furnisher shall: (A) conduct an investigation with respect to the disputed information; (B) review all relevant information provided by the consumer reporting agency pursuant to Section 1681i(a)(2) of this title; (C) report the results of the investigation to the consumer reporting agency; and (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis.  *Id.* at § s-2(b) (emphasis added).

23.    Under the FCRA, any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer: in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure; for statutory damages of not less than $100 and not more than $1,000; for such amount of punitive damages as the court may allow; and for the costs of the action together with reasonable attorneys' fees. *Id.* at § n.

24.    Under the FCRA, any person who is negligent in failing to comply

with any requirement imposed with respect to any consumer is liable to that consumer in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure and the costs of the action together with reasonable attorney fees.  *Id.* at § o.

## **GENERAL ALLEGATIONS**

25.    At all material times herein, Plaintiffs are each a "consumer" as defined by the FCRA, Section 1681a(c) and the FCCPA, Section 559.55(8) because they is an individual and allegedly obligated to pay consumer debts.

26.    At all material times herein, 1First Bank reports information to Experian, Equifax, and Trans Union concerning an alleged consumer mortgage loan account referenced by account number ending -0288 (hereinafter collectively, the "Mortgage Account").

27.    1First Bank furnishes, reports, and publishes specific details of consumers alleged outstanding or delinquent debt accounts to Experian, Equifax, and Trans Union in order to compel or coerce the debtor to either satisfy the alleged balance or suffer the consequences of delinquent accounts, such as higher interest rates on consumer loans or complete denial of credit.

28.    At all material times herein, Experian, Equifax, and Trans Union are each a "consumer reporting agency" as defined in 15 United States Code, Section

1681a(f) of the FCRA and each regularly engages in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports. Experian, Equifax, and Trans Union each disburse such consumer reports to third parties under contract for monetary compensation.

29.    At all material times herein, Defendants act themselves or through their agents, employees, officers, members, directors, successors, assigns, principals, trustees, sureties, subrogees, representatives, third-party vendors, and insurers.

30.    All necessary conditions precedent to the filing of this action occurred, or Defendants waived the same.

## FACTUAL ALLEGATIONS

## PLAINTIFFS' CHAPTER 13 BANKRUPTCY CASE

31.    In 2017, Plaintiffs filed a voluntary Chapter 13 bankruptcy petition, identified by case number 8:17-bk-01542-RCT, in the Middle District of Florida, Tampa Division.

32.    Plaintiffs included 1First Bank within their voluntary Chapter 13 petition as a creditor and 1First Bank received notice of Plaintiffs' Chapter 13 bankruptcy case.

33.     On or about June 1, 2018, the United States Bankruptcy Court for the Middle District of Florida, Tampa Division, entered an *Order Confirming Plan* in Plaintiffs' bankruptcy case.  Please see attached a true and correct copy of said Order Confirming Plan labeled as Exhibit "A."

34.     Pursuant to the *Order Confirming Plan*, Plaintiffs were required to continue making Payments to 1First Bank pursuant to the original terms of the mortgage and outside of the *Order Confirming Plan.*

35.     Pursuant to the *Order Confirming Plan*, Plaintiffs have made all necessary payments since the entry of the *Order Confirming Plan* to 1First Bank and 1First Bank has received the same from Plaintiffs directly.

**1First Bank, Experian,
<u>Trans Union, and Equifax's Unlawful Credit Reporting</u>**

36.     During October 2021, Plaintiffs obtained copies of their credit reports from Experian, Equifax, and Trans Union.

37.     According to the immediately-aforementioned reports, 1First Bank inaccurately and incompletely reported the Mortgage Account debt to Experian, Equifax, and Trans Union which were then included in Plaintiffs' credit reports and credit files as maintained by Experian, Equifax, and Trans Union.

38.     On or about February 2, 2022, with legal counsel's assistance, Plaintiffs each sent a letter to Experian, Equifax, and Trans Union disputing the

inaccurate and incomplete information 1First Bank communicated and reported on Plaintiffs' credit reports (hereinafter, "First Dispute" or "First Dispute Letter"). Please see attached a true and correct copy of said First Dispute Letter labeled as Composite Exhibit "B."

39.     Experian, Equifax, and Trans Union each received the First Dispute.

40.     More specifically, Plaintiffs' First Dispute advised Defendants that Plaintiffs continue making payments on the Mortgage Account after filing their Chapter 13 bankruptcy case and detailed each party's inaccurate and incomplete reporting of the Mortgage Account. *See* Ex. B.

41.     For example, Plaintiffs advised that Defendants failed to report a balance due on the Account, that the Account should not be listed as included in Chapter 13 Bankruptcy without also reporting the partial payment agreement, that no payments made following January 2019 were reported, and that Plaintiffs' credit reports and credit files do not reflect the payments they made to 1First Bank following the date Plaintiffs filed their Chapter 13 bankruptcy case or following the date of the *Order Confirming Plan*. *Id*.

42.     Trans Union failed to respond to Plaintiffs' First Dispute.

43.     Experian failed to respond to Plaintiffs' First Dispute.

44.     Equifax failed to respond to Plaintiffs' First Dispute.

45.     On or about July 28, 2022, legal counsel, on behalf of each Plaintiff, sent another dispute letter to Experian, Equifax, and Trans Union *again* disputing the objectively inaccurate errors and incomplete information contained in Plaintiffs' credit reports (hereinafter, "Second Dispute Letter").  Please see attached a true and correct copy of said Second Dispute Letter and enclosures labeled as Composite Exhibit "C."

46.     Along with the Second Dispute Letter, Plaintiffs included the *Amended Chapter 13 Plan* and the *Order Confirming Plan* which showed the treatment of the Mortgage Account through Plaintiffs' bankruptcy plan.  *See* Ex. C.

47.     Experian, Equifax, and Trans Union each received Plaintiffs' Second Dispute Letter and communicated the same to 1First Bank.

48.     1First Bank received notice of Plaintiffs' Second Dispute from Experian, Equifax, and/or Trans Union.

49.     Importantly, Plaintiffs' Second Dispute explicitly advised that 1First Bank, Experian, Equifax, and Trans Union failed to mark the Mortgage Account as disputed following Plaintiffs' First Dispute.  *See* Ex. C.

50.     Additionally, Plaintiffs' Second Dispute *again* advised Defendants that Plaintiffs continue making payments on the Mortgage Account after filing

their Chapter 13 bankruptcy case and detailed each party's ongoing inaccurate and incomplete reporting of the Mortgage Account. *Id.*

51.     For example, Plaintiffs advised that Defendants failed to report a balance due on the account, that the Account should not be listed as included in Chapter 13 Bankruptcy without also reporting the partial payment agreement, that no payments made following January 2019 were reported, and that Plaintiffs' credit reports and credit files do not reflect the payments they made to 1First Bank following the date Plaintiffs filed their Chapter 13 bankruptcy case or following the date of the *Order Confirming Plan*. *Id.*

52.     Notably, Plaintiffs' Second Dispute states "…as part of the Plan, [Plaintiff] was to continue making payments to 1First Bank (Account No. XXXXXXXXX0288) pursuant to the original terms of the mortgage and outside any payments made through the Ch. 13 bankruptcy plan." *Id.* at p 2.

53.     Plaintiffs' Second Dispute repeatedly asserts that Defendants *failed* to report information that accurately and completely reflects Plaintiffs' timely payments on the Mortgage Account. *Id.*

54.     In other words, Plaintiffs' Second Dispute contests that Defendants' reporting is *incomplete*.

55.     In response, Equifax responded but incorrectly and incompletely

13

verified the Mortgage Account in the following manner:

       i.   No balance shown;

      ii.   No record of payments made following January 2022;

    iii.   Not marked as "disputed";

    iv.   Marked as included in a Chapter 13 Bankruptcy without reporting that payments are being made under a partial payment agreement.

56.    Trans Union failed to respond to Mr. Guadagno's Second Dispute, claiming that the Second Dispute had been improperly sent by an unauthorized party.

57.    In contrast, Trans Union responded to Mrs. Guadagno's Second Dispute, which was identical to Mr. Guadagno's in all manners except personal identity of the sender and identifying information of the client, and deleted the Mortgage Account from Mrs. Guadagno's credit reports and credit file.

58.    Experian failed to respond to either Plaintiffs' Second Dispute.

59.    Based on Experian's, Equifax's, and Trans Union's continued reporting of the Mortgage Account as being treated the same through Plaintiffs' bankruptcy case, Experian, Equifax, and Trans Union do not maintain reasonable procedures designed to distinguish accounts that are being paid through a Chapter

13 bankruptcy rather than outside a Chapter 13 bankruptcy pursuant to the original terms of a loan agreement.

60. Notably, despite Plaintiffs' Second Dispute explicitly advising that the Mortgage Account should be marked as disputed, 1First Bank, Experian, Equifax, and Trans Union *still* failed to mark the account as disputed.

61. Plaintiffs retained Undersigned Counsel for the purpose of pursuing this matter against Defendants, and Plaintiffs are obligated to pay their attorneys a reasonable fee for their services.

62. The FCRA, Sections 1681n or 1681o, or both, provide for the award of up to $1,000 statutory damages, actual damages, punitive damages, as well as an award of attorneys' fees and costs to Plaintiffs, should Plaintiffs prevail in this matter against 1First Bank, Experian, Equifax, and Trans Union.

63. As a result of Defendants' actions, Plaintiffs suffered emotional distress, anxiety, inconvenience, frustration, annoyance, fear, loss of sleep, confusion,

64. Plaintiffs further dealt with the stress and anxiety of feeling hopeless, believing that they would be denied credit as a result of the erroneous, incorrect, and incomplete reporting of the Mortgage Account and that Plaintiffs would instead pay higher interest rates in the event they obtained financing.

65.     Plaintiffs suffered additional actual damages in the form of damage to their credit reputation, higher credit costs, and Plaintiffs refrained from applying for new credit for fear that they would be denied because of the objectively inaccurate and incomplete reporting referenced herein.

## COUNT ONE: TRANSUNION
## FAIR CREDIT REPORTING ACT –
## <u>VIOLATION OF 15 UNITED STATES CODE, SECTION 1681e(b)</u>

Plaintiffs re-allege paragraphs one (1) through sixty-five (65) as if fully restated herein and further states as follows:

66.     Trans Union is subject to, and violated the provisions of, 15 United States Code, Section 1681e(b), by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files published and maintained concerning Plaintiffs.

67.     Trans Union willfully and/or negligently failed to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiffs' credit report regarding the Mortgage Account.

68.     Further, Trans Union willfully and/or negligently failed to establish or follow reasonable procedures to assure maximum possible accuracy of Plaintiffs' credit reports and credit files when re-investigating Plaintiffs' First Dispute of the above-referenced inaccuracies contained in Trans Union's credit

report.

69.    For example, despite Plaintiffs' repeated disputes of the incompleteness of their credit reports, Trans Union did not request any documents from 1First Bank supporting 1First Bank's reporting of the account.

70.    Instead, Trans Union generated and published credit reports with respect to Plaintiffs that included the Mortgage Account yet failed to mark said account as disputed following Plaintiffs' First Dispute.

71.    Importantly, during Plaintiffs' bankruptcy case, Plaintiffs continued to pay the Mortgage Account directly to 1First Bank pursuant to the original terms of the loan agreement and Plaintiffs' Second Dispute explicitly outlined this obligation as it related to Plaintiffs' Bankruptcy Case.

72.    Based on Trans Union's continued reporting of the Mortgage Account as being treated the same through Plaintiffs' bankruptcy case, Trans Union does not maintain reasonable procedures designed to distinguish accounts that are being paid through a Chapter 13 bankruptcy rather than outside a Chapter 13 bankruptcy pursuant to the original terms of a loan agreement.

73.    Such reporting of the Mortgage Account is false and incomplete, and evidences Trans Union's failure to establish or follow reasonable procedures to assure the maximum possible accuracy of Plaintiffs' credit reports and credit

file.

74.    As a result of Trans Union's conduct, actions, and inactions, Plaintiffs incurred higher interest rates and less favorable terms on consumer loans.

75.    Trans Union's actions were a direct and proximate cause of, as well as a substantial factor in, the serious injuries, damages, and harm to Plaintiffs as stated herein.

76.    Trans Union's violations of 15 United States Code, Section 1681e(b), constitutes negligent or willful noncompliance—or both—with the FCRA, and entitles Plaintiffs to actual damages, statutory damages, punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n, or 1681o, or both.

## COUNT TWO: EQUIFAX
## FAIR CREDIT REPORTING ACT –
## <u>VIOLATION OF 15 UNITED STATES CODE, SECTION 1681e(b)</u>

Plaintiffs re-allege paragraphs one (1) through sixty-five (65) as if fully restated herein and further states as follows:

77.    Equifax is subject to, and violated the provisions of, 15 United States Code, Section 1681e(b), by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit

reports and credit files published and maintained concerning Plaintiffs.

78.     Equifax willfully and/or negligently failed to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiffs' credit report regarding the debt.

79.     Further, Equifax willfully and/or negligently failed to establish or follow reasonable procedures to assure maximum possible accuracy of Plaintiffs' credit reports and credit files when re-investigating Plaintiffs' First Dispute and Second Dispute of the above-referenced inaccuracies contained in Equifax's credit report.

80.     For example, despite Plaintiffs' repeated disputes of the incompleteness of their credit reports, Equifax did not request any documents from 1First Bank supporting 1First Bank's reporting of the account.

81.     Instead, Equifax generated and published credit reports with respect to Plaintiffs that included the Mortgage Account yet failed to mark said account as disputed following Plaintiffs' First Dispute.

82.     Importantly, during Plaintiffs' bankruptcy case, Plaintiffs continued to pay the Mortgage Account directly to 1First Bank pursuant to the original terms of the loan agreement and Plaintiffs' Second Dispute explicitly outlined this obligation as it related to Plaintiffs' Bankruptcy Case.

83.     Based on Equifax's continued reporting of the Mortgage Account as being treated the same through Plaintiffs' bankruptcy case, Equifax does not maintain reasonable procedures designed to distinguish accounts that are being paid through a Chapter 13 bankruptcy rather than outside a Chapter 13 bankruptcy pursuant to the original terms of a loan agreement.

84.     Such reporting of the Mortgage Account is false and incomplete, and evidences Equifax's failure to establish or follow reasonable procedures to assure the maximum possible accuracy of Plaintiffs' credit reports and credit file.

85.     As a result of Equifax's conduct, actions, and inactions, Plaintiffs incurred higher interest rates and less favorable terms on consumer loans.

86.     Equifax's actions were a direct and proximate cause of, as well as a substantial factor in, the serious injuries, damages, and harm to Plaintiffs as stated herein.

87.     Equifax's violations of 15 United States Code, Section 1681e(b), constitutes negligent or willful noncompliance—or both—with the FCRA, and entitles Plaintiffs to actual damages, statutory damages, punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n, or 1681o, or both.

## COUNT THREE: EXPERIAN
## FAIR CREDIT REPORTING ACT –
## <u>VIOLATION OF 15 UNITED STATES CODE, SECTION 1681e(b)</u>

Plaintiffs re-allege paragraphs one (1) through sixty-five (65) as if fully restated herein and further states as follows:

88.    Experian is subject to, and violated the provisions of, 15 United States Code, Section 1681e(b), by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files published and maintained concerning Plaintiffs.

89.    Experian willfully and/or negligently failed to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiffs' credit report regarding the debt.

90.    Further, Experian willfully and/or negligently failed to establish or follow reasonable procedures to assure maximum possible accuracy of Plaintiffs' credit reports and credit files when re-investigating Plaintiffs' First Dispute or Second Dispute of the above-referenced inaccuracies contained in Experian's credit report.

91.    For example, despite Plaintiffs' repeated disputes of the incompleteness of their credit reports, Experian did not request any documents from 1First Bank supporting 1First Bank's reporting of the account.

92.    Instead, Experian generated and published credit reports with respect to Plaintiffs that included the Mortgage Account with an "original balance" yet failed to reflect a current balance or Plaintiffs' ongoing timely payments made after the date they filed their Chapter 13 bankruptcy case.

93.    Importantly, during Plaintiffs' bankruptcy case, Plaintiffs continued to pay the Mortgage Account directly to 1First Bank pursuant to the original terms of the loan agreement and Plaintiffs' Second Dispute explicitly outlined this obligation as it related to Plaintiffs' Bankruptcy Case.

94.    Based on Experian's continued reporting of the outlined this obligation as it related to Plaintiffs' Bankruptcy Case as being treated the same through Plaintiffs' bankruptcy case, Experian does not maintain reasonable procedures designed to distinguish accounts that are being paid through a Chapter 13 bankruptcy rather than outside a Chapter 13 bankruptcy pursuant to the original terms of a loan agreement.

95.    Such reporting of the outlined this obligation as it related to Plaintiffs' Bankruptcy Case is false and incomplete, and evidences Experian's failure to establish or follow reasonable procedures to assure the maximum possible accuracy of Plaintiffs' credit reports and credit file.

96.    As a result of Experian's conduct, actions, and inactions, Plaintiffs

incurred higher interest rates and less favorable terms on consumer loans.

97.     Experian's actions were a direct and proximate cause of, as well as a substantial factor in, the serious injuries, damages, and harm to Plaintiffs as stated herein.

98.     Experian's violations of 15 United States Code, Section 1681e(b), constitutes negligent or willful noncompliance—or both—with the FCRA, and entitles Plaintiffs to actual damages, statutory damages, punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n, or 1681o, or both.

### COUNT FOUR: TRANSUNION
### FAIR CREDIT REPORTING ACT –
### <u>VIOLATION OF 15 UNITED STATES CODE, SECTIONS 1681i(a)(1), i(a)(4), and i(a)(5)</u>

Plaintiffs re-allege paragraphs one (1) through sixty-five (65) as if fully restated herein and further states as follows:

99.     Trans Union is subject to, and violated the provisions of, 15 United States Code, Section 1681i(a)(1), 1681i(a)(4), and 1681i(a)(5) by: (1) failing to conduct reasonable re-investigations of Plaintiffs' First Dispute and Second Dispute to determine whether the disputed information was inaccurate or incomplete and by failing to subsequently update the inaccurate information in Plaintiffs' credit reports and credit file; (2) failing to review and consider all

relevant information received in Plaintiffs' disputes, including all relevant attachments; and (3) failing to update or delete any information that was the subject of Plaintiffs' disputes found to be inaccurate, incomplete, or that could not be verified.

100.    Specifically, Trans Union willfully and/or negligently refused to properly re-investigate Plaintiffs' consumer reports upon receiving Plaintiffs' First Dispute and Second Dispute, as described herein.

101.    For example, despite receiving Plaintiffs' First Dispute and Second Dispute, Trans Union's re-investigations were not conducted in such a way as to determine whether information disputed by Plaintiffs was inaccurate or incomplete.

102.    Instead, rather than conduct its own, independent re-investigations, Trans Union solely relied on 1First Bank's blanket and parroted assertions regarding Plaintiffs and the account.

103.    Trans Union did not request any documents from 1First Bank corroborating information furnished and allegedly verified by 1First Bank in response to Plaintiffs' disputes, and Trans Union wholly ignored the documents submitted by Plaintiffs with their repeated disputes.

104.    Importantly, Plaintiffs enclosed a copy of the *Order Confirming*

*Plan* bankruptcy plan with their Second Dispute which showed the legal treatment and status of the Mortgage Account at issue in this case.

105.    Also, during Plaintiffs' bankruptcy case, Plaintiffs continued to pay the Mortgage Account directly to 1First Bank pursuant to the original terms of the loan agreement and Plaintiffs' Second Dispute explicitly outlined this obligation as it related to Plaintiffs' Bankruptcy Case.

106.    Additionally, after Trans Union failed to mark the Mortgage Account as disputed following Plaintiffs' First Dispute, Plaintiffs' Second Dispute explicitly advised that Trans Union failed to mark the account as disputed.  Still, Trans Union continued its reporting of the account without noting the Mortgage Account as disputed.

107.    Despite Plaintiffs' repeated disputes, Trans Union continued to report the Mortgage Account incompletely, Trans Union failed to mark the account as disputed, failed to report the current balance due, failed to distinguish the legal status of the Mortgage Account, and failed to report or otherwise indicate Plaintiffs' timely payments to 1First Bank after the date Plaintiffs filed their bankruptcy case.

108.    Notably, Trans Union did not conduct an investigation or re-investigation with respect to either Plaintiffs' First Dispute and did conduct an

investigation or re-investigation with respect to Mr. Guadagno's Second Dispute.

109.   Such reporting was objectively false and incomplete, and evidences Trans Union's failure to conduct a reasonable re-investigation of Plaintiffs' First Dispute and Second Dispute.

110.   Trans Union's reinvestigations of Plaintiffs' First Dispute and Second Dispute were not conducted reasonably.

111.   Trans Union's reinvestigations merely copied and relied upon inaccurate and incomplete information furnished by 1First Bank.

112.   Trans Union's reinvestigations of Plaintiffs' First Dispute and Second Dispute were not conducted in good faith.

113.   Trans Union's reinvestigation procedures are unreasonable.

114.   Trans Union's re-investigations of Plaintiffs' First Dispute and Second Dispute were not conducted using all information reasonably available to Trans Union given that Trans Union received a copy of the *Order Confirming Plan*.

115.   Trans Union's reinvestigations were *per se* deficient by reason of these failures in Trans Union's reinvestigation of Plaintiffs' disputes regarding the Mortgage Account.

116.   Trans Union's individual actions in violation of 15 United States

Code, Section 1681i(a)(1), constitutes negligent or willful noncompliance—or both—with the FCRA, and entitles Plaintiffs to actual damages, statutory damages, punitive, damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

**COUNT FIVE: EQUIFAX**
**FAIR CREDIT REPORTING ACT –**
**VIOLATION OF 15 UNITED STATES CODE, SECTION 1681i(a)(1), i(a)(4), and i(a)(5)**

Plaintiffs re-allege paragraphs one (1) through sixty-five (65) as if fully restated herein and further states as follows:

117.    Equifax is subject to, and violated the provisions of, 15 United States Code, Section 1681i(a)(1), 1681i(a)(4), and 1681i(a)(5) by: (1) failing to conduct reasonable re-investigations of Plaintiffs' First Dispute and Second Dispute to determine whether the disputed information was inaccurate or incomplete and by failing to subsequently update the inaccurate information in Plaintiffs' credit reports and credit file; (2) failing to review and consider all relevant information received in Plaintiffs' disputes, including all relevant attachments; and (3) failing to update or delete any information that was the subject of Plaintiffs' disputes found to be inaccurate, incomplete, or that could not be verified.

118.    Specifically, Equifax willfully and/or negligently refused to

properly re-investigate Plaintiffs' consumer reports upon receiving Plaintiffs' First Dispute and Second Dispute, as described herein.

119.    For example, despite receiving Plaintiffs' First Dispute and Second Dispute, Equifax's re-investigations were not conducted in such a way as to determine whether information disputed by Plaintiffs was inaccurate or incomplete.

120.    Instead, rather than conduct its own, independent re-investigations, Equifax solely relied on 1First Bank's blanket and parroted assertions regarding Plaintiffs and the account.

121.    Equifax did not request any documents from 1First Bank corroborating information furnished and allegedly verified by 1First Bank in response to Plaintiffs' disputes, and Equifax wholly ignored the documents submitted by Plaintiffs with their repeated disputes.

122.    Importantly, Plaintiffs enclosed a copy of the *Order Confirming Plan* bankruptcy plan with their Second Dispute which showed the legal treatment and status of the Mortgage Account at issue in this case.

123.    Also, during Plaintiffs' bankruptcy case, Plaintiffs continued to pay the Mortgage Account directly to 1First Bank pursuant to the original terms of the loan agreement and Plaintiffs' Second Dispute explicitly outlined this

obligation as it related to Plaintiffs' Bankruptcy Case.

124.    Additionally, after Equifax failed to mark the Mortgage Account as disputed following Plaintiffs' First Dispute, Plaintiffs' Second Dispute explicitly advised that Equifax failed to mark the account as disputed.  Still, Equifax continued its reporting of the account without noting the Mortgage Account as disputed.

125.    Despite Plaintiffs' repeated disputes, Equifax continued to report the Mortgage Account incompletely; Equifax failed to mark the account as disputed, failed to report the current balance due, and failed to report or otherwise indicate Plaintiffs' timely payments to 1First Bank after the date Plaintiffs filed their bankruptcy case.

126.    Such reporting was objectively false and incomplete, and evidences Equifax's failure to conduct reasonable re-investigations of Plaintiffs' First Dispute and Second Dispute.

127.    Equifax's reinvestigations of Plaintiffs' First Dispute and Second Dispute were not conducted reasonably.

128.    Equifax's reinvestigations merely copied and relied upon inaccurate and incomplete information furnished by 1First Bank.

129.    Equifax's reinvestigations of Plaintiffs' First Dispute and Second

Dispute were not conducted in good faith.

130.    Equifax's reinvestigation procedures are unreasonable.

131.    Equifax's re-investigations of Plaintiffs' First Dispute and Second Dispute were not conducted using all information reasonably available to Equifax given that Equifax received a copy of the *Order Confirming Plan*.

132.    Equifax's reinvestigations were *per se* deficient by reason of these failures in Equifax's reinvestigation of Plaintiffs' disputes regarding the Mortgage Account.

133.    Equifax's individual actions in violation of 15 United States Code, Section 1681i(a)(1), constitutes negligent or willful noncompliance—or both—with the FCRA, and entitles Plaintiffs to actual damages, statutory damages, punitive, damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

## COUNT SIX: EXPERIAN
## FAIR CREDIT REPORTING ACT –
## VIOLATION OF 15 UNITED STATES CODE, SECTION 1681i(a)(1), i(a)(4), and i(a)(5)

Plaintiffs re-allege paragraphs one (1) through sixty-five (65) as if fully restated herein and further states as follows:

134.    Experian is subject to, and violated the provisions of, 15 United States Code, Section 1681i(a)(1), 1681i(a)(4), and 1681i(a)(5) by: (1) failing to

conduct reasonable re-investigations of Plaintiffs' First Dispute and Second Dispute to determine whether the disputed information was inaccurate or incomplete and by failing to subsequently update the inaccurate information in Plaintiffs' credit reports and credit file; (2) failing to review and consider all relevant information received in Plaintiffs' disputes, including all relevant attachments; and (3) failing to update or delete any information that was the subject of Plaintiffs' disputes found to be inaccurate, incomplete, or that could not be verified.

135.    Specifically, Experian willfully and/or negligently refused to properly re-investigate Plaintiffs' consumer reports upon receiving Plaintiffs' First Dispute and Second Dispute, as described herein.

136.    For example, despite receiving Plaintiffs' First Dispute and Second Dispute, Experian's re-investigations were not conducted in such a way as to determine whether information disputed by Plaintiffs was inaccurate or incomplete.

137.    Instead, rather than conduct its own, independent re-investigations, Experian solely relied on 1First Bank's blanket and parroted assertions regarding Plaintiffs and the account.

138.    Experian did not request any documents from 1First Bank

corroborating information furnished and allegedly verified by 1First Bank in response to Plaintiffs' disputes, and Experian wholly ignored the documents submitted by Plaintiffs with their repeated disputes.

139.    Importantly, Plaintiffs enclosed a copy of the *Order Confirming Plan* bankruptcy plan with their Second Dispute which showed the legal treatment and status of the Mortgage Account at issue in this case.

140.    Also, during Plaintiffs' bankruptcy case, Plaintiffs continued to pay the Mortgage Account directly to 1First Bank pursuant to the original terms of the loan agreement and Plaintiffs' Second Dispute explicitly outlined this obligation as it related to Plaintiffs' Bankruptcy Case.

141.    Despite Plaintiffs' repeated disputes, Experian continued to report the Mortgage Account incompletely, Experian failed to mark the account as disputed, failed to report the current balance due, failed to distinguish the legal status of the Mortgage Account, and failed to report or otherwise indicate Plaintiffs' timely payments to 1First Bank after the date Plaintiffs filed their bankruptcy case

142.    Notably, Experian did not conduct an investigation or re-investigation with respect to either Plaintiffs' First Dispute and did not conduct an investigation or re-investigation with respect to either Plaintiffs' Second

Dispute.

143.   Following Plaintiffs' Second Dispute, Experian continued to the report the Mortgage Account as included in Chapter 13 Bankruptcy without acknowledging that payments were being made outside the bankruptcy plan, continued to omit payment history following January 2022, and failed to record the balance due on the Mortgage Account.

144.   Such reporting is false and incomplete because Plaintiffs have made and continue to make payments to 1First Bank in excess of $0 and the absence of a balance due indicates there is no loan obligation to begin with.

145.   Experian's failure to report such information was objectively false and incomplete, and evidences Experian's failure to conduct reasonable re-investigations of Plaintiffs' First Dispute and Second Dispute.

146.   Experian's reinvestigations of Plaintiffs' First Dispute and Second Dispute were not conducted reasonably.

147.   Experian's reinvestigations merely copied and relied upon inaccurate and incomplete information furnished by 1First Bank.

148.   Experian's reinvestigations of Plaintiffs' First Dispute and Second Dispute were not conducted in good faith.

149.   Experian's reinvestigation procedures are unreasonable.

150.    Experian's re-investigations of Plaintiffs' First Dispute and Second Dispute were not conducted using all information reasonably available to Experian given that Experian received a copy of the *Order Confirming Plan*.

151.    Experian's reinvestigations were *per se* deficient by reason of these failures in Experian's reinvestigation of Plaintiffs' disputes regarding the Mortgage Account.

152.    Experian's individual actions in violation of 15 United States Code, Section 1681i(a)(1), constitutes negligent or willful noncompliance—or both— with the FCRA, and entitles Plaintiffs to actual damages, statutory damages, punitive, damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

## COUNT SEVEN: 1FIRST BANK
## FAIR CREDIT REPORTING ACT –
## <u>VIOLATION OF 15 UNITED STATES CODE, SECTION 1681s-2(b)</u>

Plaintiffs re-allege paragraphs one (1) through sixty-five (67) as if fully restated herein and further states as follows:

153.    1First Bank is subject to, and violated the provisions of, 15 United States Code, Section 1681s-2(b), by willfully and/or negligently publishing or furnishing inaccurate and incomplete trade-line information within Plaintiffs' credit reports, failing to fully and properly re-investigate Plaintiffs' disputes,

failing to review all relevant information regarding the same, and failing to correctly report the Mortgage Account on Plaintiffs' credit reports after re-investigating Plaintiffs' disputes.

154.    As described above, despite receiving notice of Plaintiffs' disputes from Experian, Equifax, and Trans Union, 1First Bank willfully and/or negligently reported erroneous, inaccurate, and incomplete credit information regarding the Mortgage Account to Experian, Equifax, and Trans Union.

155.    Specifically, after receiving notice of Plaintiffs' repeated disputes from Experian, Equifax, and Trans Union, 1First Bank failed to mark, notate, or otherwise indicate that Plaintiffs disputed 1First Bank's, Experian's, Equifax's, and Trans Union's reporting of the Mortgage Account.

156.    1First Bank's failure to mark the Mortgage Account disputed is inaccurate and incomplete because Plaintiffs have in fact disputed 1First Bank's reporting of the Mortgage Account no less than two (2) times.

157.    Importantly, 1First Bank participated in Plaintiffs' Chapter 13 bankruptcy case, has received and continues to receive payments outside of Plaintiffs' bankruptcy plan, and has received and continues to receive payments from Plaintiffs directly with respect to the Mortgage Account pursuant to the terms of the underling loan agreements.

158. Despite 1First Bank participating in Plaintiffs' Chapter 13 bankruptcy case, despite 1First Bank receiving payments outside of Plaintiffs' bankruptcy plan, despite 1First Bank receiving payment from Plaintiffs directly with respect to Mortgage Account, and despite Plaintiffs' repeated disputes notifying 1First Bank of the same, 1First Bank continued to report the Mortgage Account the same by reporting as included in bankruptcy.

159. 1First Bank failed to report a balance owed on the Mortgage Account—whether pursuant to the approved bankruptcy plan or pursuant to the original terms of the underlying loan agreements—failed to report Plaintiffs' payments and instead reported a monthly payment of $0.

160. Such reporting is inaccurate and incomplete because Plaintiffs have made and continue to make payments to 1First Bank in excess of $0 and the absence of a balance due indicates there is no loan obligation to begin with.

161. 1First Bank's re-investigations were not conducted in good faith.

162. 1First Bank's re-investigations were not conducted reasonably.

163. 1First Bank's re-investigations were not conducted using all information reasonably available to 1First Bank given that 1First Bank participated in Plaintiffs' bankruptcy case, received notices of Plaintiffs' disputes from Plaintiffs and the credit bureaus, and knew that Plaintiffs were making

payments on the Mortgage Account pursuant to the terms of the original loan agreement.

164.    1First Bank's conduct was a direct and proximate cause of, as well as a substantial factor in, causing the serious injuries, damages, and harm to Plaintiffs as stated herein.

165.    1First Bank's actions in violation of 15 United States Code, Section 1681s-2(b), constitute negligent or willful noncompliance, or both, with the FCRA, and entitles Plaintiffs to actual damages, statutory damages, and punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

## PRAYER FOR RELIEF

**WHEREFORE**, as a direct and proximate result of Defendants' conduct, Plaintiffs respectfully requests an entry of:

a.    Judgment against Defendants for maximum statutory damages for violations of the FCRA;

b.    Judgment enjoining Defendants from engaging in further conduct in violation of the FCRA;

c.    Actual damages in an amount to be determined at trial;

d.    Compensatory damages in an amount to be determined at

trial;

e.      Punitive damages in an amount to be determined at trial;

f.      An award of attorney's fees and costs; and

g.      Any other such relief the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all issues triable by right.

## SPOLIATION NOTICE AND DEMAND TO RETAIN EVIDENCE

Plaintiffs hereby give notice to Defendants and demand that Defendants and their affiliates safeguard all relevant evidence—paper, electronic documents, or data—pertaining to this litigation as required by law.

Respectfully submitted,

**SWIFT LAW PLLC**

*/s/ Jon P. Dubbeld*
**Jon P. Dubbeld, Esq., FBN 105869**
8380 Bay Pines Blvd.
St. Petersburg, FL 33709
Phone: (727) 490-9919
Fax: (727) 255-5332
jdubbeld@swift-law.com
jmurphy@swift-law.com
*Counsel for Plaintiffs*